404 S.E.2d 771

**Gilbert SELMAN and Beulah Selman, Plaintiffs Below, Appellees,**

**v.**

**Harold ROBERTS and Nancy Barker, Defendants Below, and Wayne Lee and Brenda Lee, Defendants–Interpleaders Below, Appellants.**

**No. 19114.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1991.

Decided April 26, 1991.

---

Dan L. Hardway, Panama City, for defendants-interpleaders below, appellants.

Howard J. Blyler, Cowen, for plaintiffs below, appellees.

PER CURIAM:

This is an appeal by Harold Roberts, Nancy Barker, Wayne Lee, and Brenda Lee, defendants in the action below, from a final order of the Circuit Court of Webster County. The appellants contend that the trial court erred by 1) denying their motion for a directed verdict in which they alleged that the plaintiffs had not proven intent, exclusivity, or open and notorious possession as required in an adverse possession case; 2) denying their motion for summary judgment and allowing the case to be tried on a theory of adverse possession under color of title, thereby confusing the jury; and 3) refusing to give an instruction on their theory of the case regarding the necessary intent which must be exhibited in an adverse possession case. We disagree with the appellants' contentions and affirm the decision of the Circuit Court of Webster County.

On or about October 15, 1956, the appellees, Gilbert and Beulah Selman, acquired a tract of land in Webster County, West Virginia. At the time of their acquisition, Jack Roberts, father of appellant Harold Roberts, owned an adjoining tract. The appellees assumed that a fence existing on the property designated the actual boundary line between the Selman tract and the Roberts tract. The appellees conducted themselves in accordance with their assumption that the fence constituted the boundary line, and the adjoining landowner did not question their use of the property. The appellees pastured their cattle on the land, maintained the fence, attached an interior fence in a perpendicular fashion to the fence in question, cut firewood on the property, and leased the property to other farmers for the pasturing of cattle.

In 1972, Wayne and Brenda Lee purchased a tract which also adjoined the Selman property. The fence line in question was situated in such manner as to separate the Selman/Roberts properties and the Selman/Lee properties. In 1981, Mr. and Mrs. Lee had their property surveyed in

order to determine their exact boundaries. Prior to the survey requested by the Lees, the fence line was assumed to designate the actual boundary line between the Selman property and the Lee property. The Lees' predecessor in title, Mr. Lee's grandfather, had apparently told Mr. Lee that the fence constituted the boundary line, and Mr. Selman also believed that the fence constituted the boundary line.[1]

It was apparently not until the Lees had their property surveyed in 1981 that the parties became aware of the true location of the boundary line. The actual boundary line was situated several feet back from the fence line on what had been considered the Selman property. Thus, while the appellees had always used the land up to the fence line, the survey revealed that the appellants actually owned the disputed land. The disputed property consists of approximately 3.18 acres along the Selman/Roberts division and approximately 1.05 acres along the Selman/Lee division.

With regard to the placement of the fence, appellant Harold Roberts testified at trial that his father had intentionally built the fence several feet back from the property line in approximately 1943 to 1946 for the purpose of using the property between the fence and the line for cutting firewood. Several witnesses for the appellees, however, disputed the issue of whether Roberts' father built the fence, stating that the fence line had existed prior to the 1940's and that the fence line had always been considered the boundary line between the various properties it divided.

By 1986, appellant Harold Roberts and his wife Nancy Barker had become embroiled in a dispute with the appellees over firewood that Mr. Roberts had cut from the disputed property between the fence and what had been discovered to be the actual boundary line. In early 1987, the appellees hired a surveyor to determine the placement of the boundary line. That surveyor placed the boundary along the same line as

---

1. Although the Lees testified at trial with regard to the assumed boundary line and will be affected by the result herein, specific testimony regarding actual usage and possession of the disputed property involved only a comparison of the Selman and Roberts usage.

had been determined by the surveyor previously hired by the Lees.

On March 3, 1987, the appellees filed a complaint in the Circuit Court of Webster County alleging adverse possession of the disputed property. In that complaint, the appellees alleged adverse possession by color of title only.[2] Appellants Harold Roberts and Nancy Barker denied the relevant allegations of the complaint, but admitted that the appellees Gilbert and Beulah Selman were claiming the land under color of title. Mr. Roberts and Ms. Barker also asserted a counterclaim against the appellees seeking, *inter alia,* that the court quiet title between the parties.

Appellants Wayne and Brenda Lee were interpleaded into the action by order of the circuit court dated May 6, 1987. Upon the appellants' motion for summary judgment, the court held the motion in abeyance and allowed the appellees to amend their complaint to allege adverse possession under a claim of right as well as by color of title. The court also denied a pretrial motion by the appellants to exclude any evidence regarding color of title. The appellants based their motion to exclude on their contention that evidence regarding color of title would be misleading and confusing to the jury since there was no evidence that the appellees' deed contained any language indicating ownership of the disputed property. The case was tried before the Circuit Court of Webster County, and the jury returned a verdict in favor of the appellees, determining that they had acquired the disputed property by adverse possession.

## I.

The appellants contend that the circuit court erred by denying their motion for a directed verdict in which they asserted that the Selmans had not proven the type of intent they contended was neces-

sary to satisfy the element of hostility, had not proven exclusivity, and had not proven open and notorious possession. We specifically enunciated the elements of adverse possession in *Somon v. Murphy Fabrication & Erection Co.,* 160 W.Va. 84, 232 S.E.2d 524 (1977).

> One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.

*Id.* at Syl. Pt. 3.

The appellants also argue that syllabus point 4 of *Somon,* regarding the element of adverse or hostile possession, was misinterpreted by the lower court. Syllabus point 4 provides as follows:

> Where one by mistake occupies land up to a line beyond his actual boundary, believing it to be the true line, such belief will not defeat his right to claim that he holds such land adversely or hostilely under the doctrine of adverse possession.

160 W.Va. at 85, 232 S.E.2d at 526.

The appellants contend that the issue of intent of the disseisor cannot be resolved by this language. They argue that a simple distinction must be made between *Somon* and the present case. In *Somon,* the disseisor claimed the land in question whether he legally obtained it by title or by adverse possession. In the present case, Mr. Selman testified that he did not intend to take anything that did not belong to

---

**2.** Claim of title (also referred to as claim of right) and color of title have been defined as follows: "A claim of title has generally been held to mean nothing more than that the disseisor enters upon the land with the intent to claim it as his own. Whereas, 'color of title' imports there is an instrument giving the appearance of title, but which instrument in point of law does not. In other words, the title paper is found to be defective in conveying the legal title." *Somon v. Murphy Fabrication & Erection Co.,* 160 W.Va. 84, 91–92, 232 S.E.2d 524, 529 (1977) (citation omitted).

him.[3] Consequently, the appellants insist that Mr. Selman's stated lack of intention to take anything that did not belong to him negates the element of intent necessary in an adverse possession claim. The appellants further argue that our decision in *Somon* did not abolish the element of intent of the disseisor, but rather simply dealt with the manner in which the requisite intent was to be proven.

The facts of the *Somon* case are remarkably similar to those of the present case. In *Somon*, the plaintiff sought to acquire land by adverse possession after the defendant, Murphy Fabrication & Erection Company, dismantled a portion of an old fence which the plaintiff had considered the boundary between the plaintiff's property and the defendant's property. 160 W.Va. at 85, 232 S.E.2d at 526. The defendant challenged the plaintiff's claim of adverse possession by asserting that because the plaintiff mistakenly believed that the old fence line constituted the actual boundary line, the plaintiff did not intend to possess the disputed area adversely or hostilely. *Id.* 160 W.Va. at 95, 232 S.E.2d at 530. Thus, the question became that of "whether, if it is shown that one holds property under the mistaken belief that it is within his deed, this fact destroys his right to claim that he held it hostilely or adversely." *Id.* We answered that question in syllabus point 4 of *Somon*, quoted above, and further explained that we adhere to what may be termed the objective test requiring investigation of the physical acts of dominion over the disputed property. Under this objective test, where physical dominion has been exercised, the element of adverse or hostile possession has been satisfied. *Id.* 160 W.Va. at 95, 232 S.E.2d at 531. We specifically rejected the subjective test whereby courts interpret the element of adverse or hostile possession to connote a mental intent. We concluded our inquiry

into this issue in *Somon* by quoting Chief Justice Holmes, in *Bond v. O'Gara*, 177 Mass. 139, 58 N.E. 275 (1900); "His claim is not limited by his belief." 58 N.E. at 276.

Likewise, in the present case, we conclude that Mr. Selman's statement regarding lack of intent to claim anything that did not belong to him did not destroy his right to claim the disputed property by adverse possession and did not negate the element of adverse or hostile possession.

The appellants also challenge the exclusivity and open and notorious possession exercised by the appellees. They contend that these issues should have been resolved at the close of the appellees' case when the appellants made their motion for a directed verdict. In *Somon*, we attempted to briefly define each of the elements required in an adverse possession case. With regard to "open and notorious" possession, we stated the following:

> For possession to be open and notorious, it is generally meant that the acts asserting dominion over the property must be of such quality to put a person of ordinary prudence on notice of the fact that the disseisor is claiming the land as his own. Proof of actual knowledge on the part of the true owner is ordinarily not required.

160 W.Va. at 91, 232 S.E.2d at 528–29 (citations omitted).

With regard to the element of "exclusive" possession, we stated the following:

> The element of 'exclusive' possession relates to the fact that the disseisor must show that others do not have possession, although this does not mean that sporadic use by others defeats this element since it only need be the type of possession which would characterize an owner's use.

*Id.*, 160 W.Va. at 91, 232 S.E.2d at 529.

■ The appellants challenge whether the appellees met these elements of open

---

3. Mr. Selman testified as follows:
   Q. Now, when you came down at the time and hooked onto this fence, and so forth, and when you was up there in the very beginning, you thought the fence line was the boundary line, the true boundary lines called for in your deed, did you not?
   A. That is right.

   Q. And you didn't have any intent to try to take anything from Jack Roberts or anybody, did you, Mr. Selman?
   A. No, sir.
   Q. You never had any intentions of doing that?
   A. No, sir.

and notorious possession and exclusive possession. They argue that the appellees did not conduct themselves in such manner as to place the appellants on notice of the fact that the appellees were claiming the land as their own. The appellees, however, introduced testimony evidencing that they continuously pastured cattle on the property, maintained the fence, walked the fence line after storms in search of damage, cut firewood on the property, attached an interior fence in a perpendicular fashion to the fence in question, and leased the property to other farmers for the pasturing of cattle. Individuals to whom the appellees had leased the property during a period of illness suffered by appellee Gilbert Selman testified that they had maintained the fence in exchange for the right to pasture their cattle on the Selman property. The home of appellant Harold Roberts is situated within view of the fence and the disputed property. Despite all the activity which allegedly took place on that property, however, neither the appellee nor any individual leasing the property or working on behalf of the appellee was ever approached or questioned by the appellants with regard to the use of the property. Short of erecting a home or other building on the disputed property, the appellees did present evidence to demonstrate that they used this farm-land in accordance with its expected use and were physically present on the property often enough to provide a person of ordinary prudence with notice of the fact that they claimed the land as their own. There certainly was sufficient evidence that a jury could make such a conclusion.

■ The appellants also argue that the appellees failed to satisfy the element of exclusivity by allowing the appellants to use the property to gather firewood and to clear roads for purposes of obtaining the firewood. The appellees, however, offered evidence that they had given the appellants permission to gather the firewood and to use small gates to obtain entrance onto the disputed property. As quoted above, we have specifically stated that "sporadic use" by others does not defeat the claim of exclusive possession. *Somon,* 160 W.Va. at 91, 232 S.E.2d at 529.

## II.

■ The appellants also allege that the lower court erred in denying their motion for summary judgment and in allowing the case to be tried on the theory of adverse possession under color of title, thereby confusing the jury. The appellants contend that the trial court's failure to exclude all evidence regarding a color of title claim confused and misled the jury. The appellants argue that the trial court compounded its error by refusing an instruction offered by the appellants regarding the color of title/claim of right distinction.[4] Although the trial court did not accept the offered instruction, the court did advise the jury prior to the reading of instructions that the

4. The defendants/appellants offered the following instruction:

The Court instructs the jury that, basically, there are two (2) types of adverse possession. One type is adverse possession by color of title, that is to say by a title document such as a deed which purports to give the description of the land claimed.

You are therefore instructed that if one claims adverse possession by color of title, the person claiming adverse possession can only claim the land contained within the boundary as described in the deed.

You are further instructed that the second type of adverse possession is referred to as claim of right. This type of adverse possession is when the person claiming the land takes it by some forceful act without a deed or other instrument purporting to convey title. In other words, adverse possession by claim of right is when the person claiming the

land goes upon the land without a deed therefor and holds the same openly, notoriously, adversely, hostilely, visibly, exclusively, and continuously for a period of ten (10) years.

You are therefore instructed that since the true boundary line between the plaintiffs' and defendants' land is not in dispute, you are instructed that the plaintiffs cannot claim adverse possession to the disputed land by color of title, that is by virtue of their deed, and they are therefore restricted to claiming adverse possession by claim [of] right, at the time they contend they claimed the disputed land, they had the intention to claim it by claim of right and not by color of title, and unless you believe by the preponderance of the evidence in this case that the plaintiffs had the intention to claim the disputed land by claim of right and not by color of title, then you should find a verdict in favor of the defendants.

plaintiffs did not have a color of title claim and were basing their action on a claim of right. The jury was then clearly instructed regarding the elements of an adverse possession claim and the proof necessary to sustain each element. We perceive no error with regard to the trial court's conduct in this regard.

### III.

As their third assignment of error, the appellants contend that the trial court erred in refusing to give an instruction on

their theory of the case regarding the necessary intent to be exhibited in an adverse possession case based upon our decision in *Somon.*[5] Rather than accepting any of the offered instructions, the court drafted its own instructions regarding the elements to be proven by the appellees.[6]

After thoroughly reviewing the instructions offered and the instructions actually given, we conclude that the trial court instructed the jury properly in accordance with our decision in *Somon.* We addressed the appellants' contentions regarding the interpretation of *Somon* in Section I of this

5. The defendants/appellants offered the following instructions:

Defendants' Instruction No. 6:

The Court instructs the jury if you believe from the evidence in this case that the plaintiffs only intend to claim the land encompassed by their deed, then you are instructed you must find a verdict in favor of the defendants.

Defendants' Instruction No. 5:

The Court instructs the jury that if you believe from the evidence in this case that the plaintiffs did not intend to claim the disputed land by claim of right until after the surveys were made and they discovered the true boundary line between their property and that of the defendants, you are instructed you should find a verdict in favor of the defendants.

Defendants' Instruction No. 14:

The Court instructs the jury that if one occupies land up to a certain fence, because he believes that to be the line of his land, but not having any intention to claim up to the fence if it should be beyond the line, the possession up to the fence is not adverse.

You are therefore instructed that if you believe the plaintiff, Gilbert Selman, occupied the lands up to the fence in question because he believed that to be the line of his land, but you further believe from the evidence that the plaintiff, Gilbert Selman, did not have any intention to claim up to the fence if the fence was beyond his true boundary line, then you are instructed that the plaintiff cannot claim the land between his true boundary line and the fence by adverse possession.

Therefore, you are instructed that if you believe from the evidence in this case that the fence is not the true boundary line between the lands of the plaintiffs and the defendants, then you should find a verdict in favor of the defendants.

Defendant's Instruction No. 16:

The Court instructs the jury that where a fence is believed to be a true boundary, and a

claim of ownership is made up to the fence as it is located, if the intent to claim title exists only on the condition that the fence is on the true line, the intention is not absolute, but conditional and the possession is not adverse.

You are therefore instructed that although you believe the plaintiff claimed ownership up to the fence as it was located, if he did not have the intent to claim title to the land up to the fence unless the fence was on the true line, then you are instructed you should find a verdict in favor of the defendants.

6. The court instructed the jury as follows:

Court's Instruction No. 1:

The Court instructs the jury that the first element in the doctrine of adverse possession that the Plaintiff Gilbert Selman must prove by a preponderance of the evidence is that he held the disputed area adversely or hostilely.

Hostility of possession means only that one in possession of land claims the exclusive right thereto. Hostility of possession does not imply an ill will, only an assertion of ownership adverse to that of the true owner and all others.

The Court further instructs the jury that the law of the State of West Virginia is that the jury must look to the physical acts as established by the plaintiff's evidence and the defendant's evidence and determine by a preponderance of the evidence whether or not the plaintiff exercised such physical dominion over the disputed area so as to prove to the jury that he, Gilbert Selman, held the disputed area adversely or hostilely.

Court's Instruction No. 2:

The Court instructs the jury that where one by mistake occupies land up to a line beyond his actual boundary, believing it to be the true line, such belief will not defeat his right to claim that he holds such land adversely or hostilely under the doctrine of adverse possession.

opinion and concluded that the appellants' contentions were meritless. Consequently, we fail to discern any error by the trial court in refusing the instructions offered by the appellants on this issue.

For the foregoing reasons, the judgment of the Circuit Court of Webster County is affirmed.

Affirmed.