474 S.E.2d 489

Gary S. BROWN and Mitzi M. Brown,
Plaintiffs Below, Appellees,

v.

David L. GOBBLE and Sue Ann Gobble,
Defendants Below, Appellants.

No. 23173.

Supreme Court of Appeals of
West Virginia.

Submitted April 30, 1996.

Decided May 17, 1996.

Mark E. Wills, Wills & Sadler, Princeton, for Appellees.

Robert H. Miller, II, Katz, Kantor & Perkins, Bluefield, for Appellants.

CLECKLEY, Justice.

This case involves the doctrines of adverse possession and tacking. David L. Gobble and Sue Ann Gobble, appellants/defendants below, appeal from a final order of the Circuit Court of Mercer County. At the conclusion of a bench trial the circuit court granted judgment for a strip of land to Gary S. Brown and Mitzi Brown, appellees/plaintiffs

below. In prosecuting this appeal, the defendants allege two assignments of error: (1) it was error for the circuit court to apply a clear and convincing evidence standard of proof to the doctrine of adverse possession, and (2) the circuit court committed error in finding that the evidence failed to prove adverse possession.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs instituted this action by filing a complaint on August 25, 1994. The complaint sought to have the defendants enjoined from interfering with the plaintiffs' intended use of a two-feet-wide tract of land that formed a boundary running between the adjoining properties of the parties.[1] The defendants answered the complaint and filed a counterclaim alleging ownership to the tract of land by adverse possession.[2]

The record reveals that the defendants purchased their property by deed dated April 24, 1985.[3] At the time of this land purchase a fence was in place which ran along the rear boundary of defendants' property. The two-feet-wide tract of land in question here, was enclosed by the fence and visually appeared to be part of the defendants' property. When the defendants bought their land, they were informed by their real estate agent that their property ran up to and included the fence. The call references in their deed "read" as though the two-feet-wide tract of land was part of the conveyance.[4] The defendants believed the two-feet-wide tract of land was part of their property, and utilized it consistent with ownership rights up until the filing of this law suit.

The plaintiffs purchased their property by deed dated April 28, 1989. Shortly before making this purchase, the plaintiffs had a survey of the property done. The survey revealed that the fenced-in two-feet-wide tract of land was part of plaintiffs' property.[5] Although the plaintiffs were aware at the time of the purchase of their property that the two-feet-wide tract of land was, in fact, theirs, they did nothing to show ownership to the tract until around August, 1994. It was in August of 1994, that the plaintiffs decided to build a road along the two-feet-wide tract of land. To do this meant cutting down several trees that were along the tract.[6] The defendants apparently attempted to prevent the plaintiffs from building the road by asserting that they owned the tract of land. The plaintiffs thereafter instituted the present suit.[7] The trial of this matter was held by the circuit court, sitting as factfinder, on December 13, 1994. The trial court made findings of fact and conclusions of law, wherein it held that "the defendants have failed to show by clear and convincing evi-

---

1. The plaintiffs also requested damages in this case, but the record does not disclose the disposition of that claim.

2. The defendants also claimed ownership to the land under the doctrine of acquiescence. The circuit court found that this doctrine was not proven. The defendants have not raised this issue as an assignment of error.

3. The disputed property is located in the Beaver Pond District, Mercer County, West Virginia.

4. The pertinent call references of defendants' deed provide:

 "thence leaving the said Willowbrook Road N 71° 28′ E 184.80 feet to a *fence post* in the line of said private driveway, thence S 32° 33′ E 133.80 feet to a *fence post* in the line of said driveway, thence S 17° 04′ W 13 feet to a *fence post* in the line of said private driveway[.]" (Emphasis added.)

5. The pertinent call references of plaintiffs' deed provide:

 "thence S. 62° 00′ W. 31.41 feet crossing a road to a *fence post* corner of the David Gobble parcel; thence running with the David Gobble parcel the following calls: N. 17° 32′ E. 13.00 feet to a *fence post;* thence N. 32° 05′ W. 133.80 feet to a *fence post* [.]" (Emphasis added.)

6. The road was going to provide access to an animal clinic the plaintiffs had constructed on their property.

7. While this case was pending, the plaintiffs moved the circuit court for injunctive relief permitting them to cut down several trees along the disputed tract and to erect a new fence. The circuit court, by order dated September 27, 1994, granted the injunctive relief after requiring the plaintiffs to post a bond in the sum of $25,-000.

dence their ownership by way of adverse possession[.]"

## II.

## DISCUSSION

 The contentions raised on appeal require us to scrutinize the record and determine whether the evidence was sufficient to prove adverse possession by the *clear and convincing standard* that we explicitly have adopted today. We note at the outset that the standard of review for judging a sufficiency of evidence claim is not appellant friendly. Following a bench trial, the circuit court's findings, based on oral or documentary evidence, shall not be overturned unless clearly erroneous, and due regard shall be given to the opportunity of the circuit judge to evaluate the credibility of the witnesses. W.Va.R.Civ.P 52(a). Under this standard, if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it, even though convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. We will disturb only those factual findings that strike us wrong with the "force of a five-week-old, unrefrigerated dead fish." *United States v. Markling,* 7 F.3d 1309, 1319 (7th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995). Nor is the scope of our review broadened because the burden of proof is clear and convincing. Indeed, the burden of proof has an impact only if the evidence is in equipoise. *See Director, OWCP, Dept. of Labor v. Greenwich Collieries,* 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). Under these well established principles, we now review the errors raised by the defendants.

## A.

### *Standard of Proof for Adverse Possession Claims*

The first argument raised by the defendants is that the circuit court committed error by requiring them to prove adverse possession by clear and convincing evidence. Although neither party presents any binding precedent of this Court, the defendants contend that the proper standard for proving adverse possession is by a preponderance of the evidence, and that this is implicitly established by some of our cases. The defendants cite language in our decision in *Naab v. Nolan,* 174 W.Va. 390, 392, 327 S.E.2d 151, 154 (1985), wherein we stated:

> "The circuit court found by a *preponderance of the evidence* the existence of facts sufficient to establish title by adverse possession[.] We agree with the court's decision." (Emphasis added.)

The plaintiffs contend that the above language in *Naab* is not controlling for two reasons. First, the quote is not intended to be a statement of law, but is merely part of the discussion from the court below, and there was no explicit acceptance of this standard by the Court. Second, the standard of proof was not disputed on appeal and, therefore, this Court was not asked to decide the issue. The plaintiffs take the position that we have yet, definitively, to establish a standard of proof for adverse possession, and would further urge that we adopt the clear and convincing standard.[8]

There is a minority view that a preponderance of the evidence is sufficient to establish adverse possession. *See Moore v. Dudley,* 904 S.W.2d 496 (Mo.App. E.D.1995) (preponderance of the evidence); *Dugan v. Jensen,* 244 Neb. 937, 510 N.W.2d 313 (1994) (preponderance of the evidence); *Davis v. Konjicija,* 86 Ohio App.3d 352, 620 N.E.2d 1010 (1993) (preponderance of the evidence); *Potlatch Corp. v. Hannegan,* 266 Ark. 847, 586 S.W.2d 256 (1979) (preponderance of the evidence). There is little reason given for adopting this standard other than it is the usual rule in civil cases.

On the other hand, the view adopted by a majority of jurisdictions is that adverse possession must be shown by clear and convincing evidence. *See Dittmer v. Jacwin Farms Inc.,* 637 N.Y.S.2d 785 (1996); *Davis v.*

---

8. This Court approved in passing an adverse possession preponderance of the evidence jury instruction given by the trial court in *Selman v.*

*Roberts,* 185 W.Va. 80, 86 n. 6, 404 S.E.2d 771, 777 n. 6 (1991).

*Parke,* 135 Or.App. 283, 898 P.2d 804 (1995); *Hollaway v. Hartley,* 668 So.2d 23 (Ala.Civ. App.1995); *Harkins v. Fuller,* 652 A.2d 90 (Me.1995); *Sierens v. Frankenreider,* 259 Ill. App.3d 293, 198 Ill.Dec. 444, 632 N.E.2d 1055 (1994); *Gorte v. Department of Transp.,* 202 Mich.App. 161, 507 N.W.2d 797 (1993); *Inch v. McPherson,* 176 Ariz. 132, 859 P.2d 755 (1992); *Blankinship v. Payton,* 605 So.2d 817 (Miss.1992); *Locke v. O'Brien,* 610 A.2d 552 (R.I.1992); *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 686, 837 P.2d 812 (1991); *Grappo v. Blanks,* 241 Va. 58, 400 S.E.2d 168 (1991); *Williams v. Howell,* 108 N.M. 225, 770 P.2d 870 (1989); *Yliniemi v. Mausolf,* 371 N.W.2d 218 (Minn.App.1985); *Crigger v. Florida Power Corp.,* 436 So.2d 937 (Fla.App. 5 Dist.1983); *Benavides v. Steward,* 655 S.W.2d 298 (Tex.App.-Corpus Christi 1983); *Carpenter v. Ruperto,* 315 N.W.2d 782 (Iowa 1982).

■ It is appropriate, in our opinion, that adverse possession be proved by a more stringent standard than a mere preponderance of the evidence. First, West Virginia appears to have been leaning toward the majority rule. Even before the turn of the century, this Court had indicated that "clear" evidence was needed to establish adverse possession. In Syllabus Point 2 of *Boggs v. Bodkin,* 32 W.Va. 566, 9 S.E. 891 (1889), this Court explicitly stated: "... whether he has had ten years' adversary possession of the land, he must, ... specifically establish *by clear* evidence, that he has had such adversary possession for ten years...." (emphasis added). Moreover, we agree with the plaintiffs that it would be inconsistent for this Court to adopt a preponderance of the evidence standard for adverse possession, in light of the fact that we have adopted a clear and convincing standard for proving an easement. *See* Syl. pt. 3, *Norman v. Belcher,* 180 W.Va. 581, 378 S.E.2d 446 (1989).

■ Second, on policy grounds there is sound and reasonable justification for the majority view. The function of a standard of proof is to "instruct the factfinder concerning the degree of confidence our society thinks he [or she] should have in the correctness of a factual conclusion for a particular kind of adjudication." *In re Winship,* 397 U.S. 358,

370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J. Concurring). "The standard [of proof] serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).

■ While the preponderance standard applies across the board in civil cases, a higher standard is needed where fairness and equity require more persuasive proof. *See* 2 *McCormick on Evidence* § 340 (Strong ed. 1992) (cases collected); Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 3.4, pp. 135 (1995) (cases collected). Although the standard clear and convincing is less commonly used, it nonetheless is no stranger to West Virginia civil cases. In *Wheeling Dollar Sav. & Trust Co. v. Singer,* 162 W.Va. 502, 510, 250 S.E.2d 369, 374 (1978), this Court stated that "clear and convincing" is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established. It should be the highest possible standard of civil proof. *Cramer v. Dep't of Hwys.,* 180 W.Va. 97, 99 n. 1, 375 S.E.2d 568, 570 n. 1 (1988). The interest at stake in an adverse possession claim is not the mere loss of money as is the case in the normal civil proceedings. Rather, it often involves the loss of a homestead, a family farm or other property associated with traditional family and societal values. To this extent, most courts have used the clear and convincing standard to protect these important property interests. *See Stevenson v. Stein,* 412 Pa. 478, 482, 195 A.2d 268, 270 (1963) (to prove adverse possession "credible, clear and definitive proof" is needed). Adopting the clear and convincing standard of proof is more than a mere academic exercise. At a minimum, it reflects the value society places on the rights and interests being asserted.

■ The bottom line is that the function of the legal process is to minimize the risk of erroneous decisions. *See Mathews v. Elderidge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The law should not allow

the land of one to be taken by another, without a conveyance or consideration, merely upon slight presumption or probabilities. The relevant evidence in an adverse action must necessarily expand over a ten year period. A preponderance standard, in our judgment, would create the risk of increasing the number of cases whereby land is erroneously taken from the title owner under spurious adverse possession claims. This heightened standard of clear and convincing is one way to impress the factfinder with the importance of the decision, and thereby reduce the chances that spurious claims of adverse possession will be successful. Having concluded that the preponderance standard falls short of meeting the demands of fairness and accuracy in the factfinding process in the adjudication of adverse possession claims, we hold that the burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title. To the extent that a different standard is intimated in our previous decisions, we herein expressly reject such intimations.

### B.

#### *The Sufficiency of the Evidence*

The next argument raised by the defendants is that their evidence was sufficient to establish adverse possession under either a preponderance of the evidence standard or, on the other hand, under the clear and convincing evidence standard. Of course, we now must determine whether the record supports the trial court's findings under the clear and convincing standard.

■ It is well settled in this jurisdiction that in a case tried without the aid of a jury, the trial court, and not the appellate court, is the judge of the weight of the evidence. Actually, in a nonjury trial, the trial judge has usually been regarded as a surrogate for the jury, and his or her findings are accorded corresponding weight. Subject only to W.Va.R.Civ.P. 52(a)'s clearly erroneous standard, this standard precludes a reviewing court from reversing a finding of the trier of fact simply because the reviewing court would have decided the case differently. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In fact, it is clear that the burden on an appellant attempting to show clear error is especially strong when the findings are primarily based upon oral testimony and the circuit court has viewed the demeanor and judged the credibility of the witnesses. *See* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2585 & n. 5 (1995). Accordingly, the circuit court's factual findings come here well armed with the polished buckle and shield of the "clearly erroneous" standard embodied in Rule 52(a). Because of the weight to be given to evidence is peculiarly within the province of the trial court, it is the trial court and not this Court that draws the distinction between evidence which is clearly convincing and that which merely preponderates. However, the question whether the circuit court considered the proper material elements for adverse possession is a question of law, subject to our *de novo* review.

■ Were we given the task, we would not hesitate to find that the record before this Court demonstrates overwhelmingly that adverse possession has been proven by clear and convincing evidence. However, our decisions have made plain that an appellate court is not the appropriate forum for a resolution of the persuasive quality of evidence. To the contrary, our opinions have suggested that a reviewing court ought not to disturb such a finding unless, on the whole of the record, this Court forms a strong, unyielding belief that a mistake has been made. In plain terms, we should not overrule a circuit court's finding or conclusion as to whether the burden of persuasion has been met unless the evidence is so one-sided that it may be said that a reasonable factfinder could not have gone the way of the circuit court. In order to sharpen the focus of our inquiry, we first illuminate the legal framework and elucidate the requirements that attend a proper showing of adverse possession.

■ Regarding the doctrine of adverse possession, we stated in *Naab,* 174 W.Va. at 392, 327 S.E.2d at 153–154, the following:

"The doctrine of adverse possession is firmly established in our property law and accompanies W. Va.Code 55–2–1 [1923] in settling land disputes equitably and efficiently. This doctrine enables one who has been in possession of a piece of real property for more then ten years to bring an action asserting that he is now the owner of that piece of property even when title rests in another. In Syllabus Point 3 of *Somon v. Murphy Fabrication and Erection Co.*, 160 W.Va. 84, 232 S.E.2d 524 (1977) this Court stated:

'One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.' "

We also held in Syllabus Point 4 of *Somon,* that:

"Where one by mistake occupies land up to a line beyond his actual boundary, believing it to be the true line, such belief will not defeat his right to claim that he holds such land adversely or hostilely under the doctrine of adverse possession." [9]

In addition to recognizing the common law doctrine of adverse possession, we have long recognized the principle of "tacking." In Syllabus Point 3 of *Jarrett v. Stevens,* 36 W.Va. 445, 15 S.E. 177 (1892), we stated that, "[t]o tack different adverse possessions to make up the period of bar the persons holding such possessions must be connected by privity of title or claim." *See Roy v. Cunningham,* 46 Wash.App. 409, 413, 731 P.2d 526, 529 (1986) ("Where there is privity between successive occupants holding continuously and adversely to the true title holder, the successive periods of occupation may be tacked to each other to compute the required 10–year period of adverse holding.") (citations omitted); *Roan v. Carter,* 427 So.2d 1337, 1340 (La.App.1983) ("One may tack [on] the possession of ancestors in title for the purpose of [adverse possession] whether or not the disputed land is included within his title.") (citation omitted); *Watson v. Price,* 356 So.2d 625, 627 (Ala.1978) ("tacking of periods of possession by successive possessors is permitted against the co-terminous owner seeking to defeat such [claim], unless there is a finding, supported by evidence, that the claimant's predecessor in title did not intend to convey the disputed strip."). An excellent and practical description of tacking was given in the case of *Kelley v. Long,* 3 Neb.App. 467, 473, 529 N.W.2d 72, 77 (1995), wherein that court stated:

"To permit tacking of successive adverse possession of grantees of an area not within the calls of a deed ... but contiguous thereto, among the ultimate facts to be established is the intended and actual transfer and delivery of such area to the grantees as successors in ownership, possession and claim. Privity means privity of possession. It is the transfer of possession, not title, which is the essential element."

With the above principles of law in view, we now turn to the evidence presented below. The plaintiffs called three witnesses during their case-in-chief. Plaintiff Mr. Brown testified that he and his wife purchased property in 1989, and that their deed gave them ownership of the two-feet-wide tract. The plaintiffs called Dana Pettrey, the surveyor of their property. Mr. Pettrey testified that his survey in 1989, revealed that the two-feet-wide tract of land was part of

---

9. Thus, the law in West Virginia is that where a person, acting under a mistake as to the true boundary lines between his or her land and that of another, takes possession of land believing it to be his or her own, up to the mistaken line, claims a prescriptive right to it and so holds, the holding is adverse, and, if continued for the requisite period may ripen into adverse possession. The fact that the one who takes possession under these circumstances had no intention of taking what did not belong to him or her, does not effect the operation of this rule. In all cases, the intention and not the mistake is the test by which the character of the possession is determined.

the plaintiffs' property. The plaintiffs also called defendant Mrs. Gobble for the purpose of showing that the defendants did not have possession of the two-feet-wide tract ten years prior to the month of August, 1995, when the plaintiffs first exercised ownership rights to the two-feet-wide tract. During the plaintiffs' case-in-chief, the following exchange occurred between defendant Mrs. Gobble and counsel for plaintiffs:

Q. Mrs. Gobble, you have not lived on that property for 10 years, have you?

A. No, sir.

Q. It won't be 10 years until April, 1995?

A. Yes, sir.

The defendants do not contend that they are the lawful owners of the two-feet-wide tract of boundary land as a result of call references in their deed. That is, they do not claim possession under color of title. They have alleged ownership through claim of title or right.[10] The defendants also do not contend that they have personally possessed the two-feet-wide tract for the requisite ten-year period. Instead, they contend that they have established adverse possession by tacking on the time periods that their predecessors in title claimed the two-feet-wide tract. We have held that "tacking" permits adding together the time period that successive adverse possessors claim property, and that should this period of time added together be more than ten years, adverse

possession may be allowed. *See Reger v. Wiest,* 172 W.Va. 738, 310 S.E.2d 499 (1983).

■ To establish the element of "tacking" the defendants presented evidence that Edward and Virgie Blevins (the "Blevins") were the original owners of the property they purchased in 1985. The Blevins owned the property as far back as 1937, and during the entire time of their ownership they believed the two-feet-wide tract was part of their land, and they exercised dominion and control over the tract consistent with ownership rights. The Blevins sold their property on October 30, 1978, to Norman and Martha Fletcher (the "Fletchers"), believing that they were also conveying the two-feet-wide tract. Mr. Fletcher testified that when they bought the property they believed that they had purchased the two-feet-wide tract, and possessed it consistent with ownership rights. The defendants testified that they bought their property from the Fletchers in 1985, and believed their land purchase included the two-feet-wide tract of boundary land, and that they possessed it consistent with ownership rights, up until the filing of this lawsuit. Based upon this tacking evidence, the defendants contend that they are entitled as a matter of law to add the period 1937–1985, to their nine-and-a-half year claim to the two-feet-wide tract, which would give them far in excess of ten years adverse possession of the tract.[11]

To establish the element of "hostile" or "adverse" possession by tacking, the defen-

---

**10.** In *Somon,* 160 W.Va. at 91–92, 232 S.E.2d at 529, we distinguished claim of title and color of title as follows:

"A claim of title has generally been held to mean nothing more than that the disseisor enters upon the land with the intent to claim it as his own. Whereas, 'color of title' imports there is an instrument giving the appearance of title, but which instrument in point of law does not." (Citations omitted.)

**11.** Based upon the evidence the defendants presented regarding the Blevins and Fletchers, the defendants actually misunderstand the import of their evidence. The evidence seems to suggest that the Blevins may very well have actually established adverse possession to the two-feet-wide tract, because they maintained the tract for over ten years. The Blevins conveyed their adversely possessed property to the Fletchers, and the Fletchers in turn conveyed the same to the defendants. Therefore the tacking involved here

does not require analysis of the defendants' period of ownership, unless it is established that the Blevins did not in fact acquire adverse possession. If it is determined that the Blevins acquired adverse possession of the two-feet-wide tract, the issue then merely becomes whether the Blevins intended to convey the two-feet-wide tract to the Fletchers, and whether the Fletchers intended to convey the two-feet-wide tract to the defendants. *See Doty v. Chalk,* 632 P.2d 644, 646 (Colo.App.1981) ("Title to property acquired by adverse possession matures into an absolute fee interest after the statutory prescriptive period has expired."). The period of ownership by the defendants becomes irrelevant under this scenario. It is only if a determination is made that the Blevins did not establish adverse possession that the defendants' period of ownership becomes relevant for tacking on the time period of the Fletchers.

dants called several witnesses who testified that the two-feet-wide tract was fenced off as far back as 1937, that the Blevins placed the fence along the tract, and that the Blevins claimed the tract as theirs.[12] Evidence was presented to show that the Fletchers maintained the fence along the two-feet-wide tract, and that the fence remained in place throughout their ownership of the property. The defendants testified that they purchased their property from the Fletchers in 1985, and that they claimed ownership of the two-feet-wide tract, and that it remained fenced off up until the start of the instant law suit.

To establish the element of "actual" possession by tacking, the defendants called several witnesses who testified that the Blevins periodically repaired the fence surrounding the two-feet-wide tract, that they routinely planted a garden along the tract, and that the Blevins constructed and maintained a shed along a portion of the tract. Mr. Fletcher testified that he regularly planted a garden along the tract, that he routinely removed weeds from along the tract and fence, and that he picked blackberries from the area and walnuts from trees that had grown along the tract.[13] The defendants testified that they planted gardens along the tract, that they built a treehouse in one of the trees that had grown along the tract, and that they regularly mowed the grass and weeds in the area.

To establish the element of "open and notorious" possession by tacking, the defendants called several witnesses who testified

that during the period that the Blevins owned the defendants' property, the reputation of the two-feet-wide tract in the community was that it belonged to the Blevins.[14] Mr. Fletcher testified that the reputation in the community was that the two-feet-wide tract was part of his property. The defendants testified that the reputation in the community was that the two-feet-wide tract was part of their property.

To establish the element of "exclusive" possession by tacking, the defendants presented testimony by two of the original owners of plaintiffs' property.[15] These two witnesses testified that neither the Blevins' nor the Fletchers' claim to the two-feet-wide tract was ever objected to by them or those who owned the property with them. The defendants also presented evidence to show that only the Blevins and Fletchers respectively had control and dominion over the two-feet-wide tract. The defendants also testified that they had exclusive control and dominion over the two-feet-wide tract up until the time of this law suit.

To establish the element of "continuous" possession the defendants presented testimony that the Blevins enclosed, maintained, cultivated and claimed ownership of the two-feet-wide tract up until they sold their property to the Fletchers.[16] Mr. Fletcher testified that he maintained, cultivated and claimed ownership of the two-feet-wide tract up until he sold the property to the defendants. The defendants testified that they

12. We have held that to establish "hostile" or "adverse" possession, evidence must be presented which shows that possession of disputed property was against the right of the true owner and is inconsistent with the title of the true owner for the entire requisite ten-year period. *See Somon v. Murphy Fabrication & Erection Co., supra.*

13. We have held that to establish "actual" possession, evidence must be presented which shows that possession of disputed property was used for enjoyment, cultivation, residence or improvements for the entire requisite ten-year period. *See Ketchum v. Spurlock,* 34 W.Va. 597, 12 S.E. 832 (1891).

14. We have held that to establish "open and notorious" possession, evidence must be presented which shows that possession of disputed property was in such a manner as to give notice to

the true owner that the property is being claimed by another for the entire requisite ten-year period. *See Guthrie v. Beury,* 82 W.Va. 443, 96 S.E. 514 (1918).

15. We have held that to establish "exclusive" possession, evidence must be presented which shows that possession of disputed property was used only by the occupant and others were not permitted to use it or claim ownership during the entire requisite ten-year period. *See Lyons v. Fairmont Real Estate Co.,* 71 W.Va. 754, 77 S.E. 525 (1912).

16. We have held that to establish "continuous" possession, evidence must be presented which shows that possession of disputed property was enclosed, maintained or cultivated during the entire requisite ten-year period. *See Wilson v. Braden,* 56 W.Va. 372, 49 S.E. 409 (1904).

maintained, cultivated and claimed ownership of the two-feet-wide tract up until the instant law suit.

To establish the element of "claim of title" the defendants presented evidence to show that neither the Blevins, Fletchers nor the defendants had actual title to the two-feet-wide tract, yet each claimed ownership of it pursuant to all of the above conduct, during their entire respective occupancy.[17]

Based upon the above evidence of tacking and adverse possession, the defendants contend that they established adverse possession under the clear and convincing evidence standard. The trial court found that this evidence did not establish tacking or adverse possession by clear and convincing evidence. The trial court made this finding notwithstanding the fact that none of the defendants' tacking or adverse possession evidence was challenged or rebutted by the plaintiffs.

■ Nevertheless, we are reluctant to conclude, though invited to do so by the defendants, that the evidence was so one-sided that no rational trier of fact could find that adverse possession had not been established by clear and convincing evidence. While we agree with the defendants, that the quantity of evidence tends to fall in their favor, in assessing evidence, the trier of fact is the ultimate judge of credibility and is free to accept or reject any testimony it does not find credible. However, when a judge, sitting without jury, decides against the greater amount of the evidence, the judge is obligated to give a fuller explanation for his or her ruling. Under these circumstances, the findings in a bench trial must be sufficiently detailed, reasoned, and logical to enable the reviewing court to trace a persuasive path between the evidence and the judgment. *See Schneiderman v. United States,* 320 U.S. 118, 129–31, 63 S.Ct. 1333, 1338–40, 87 L.Ed. 1796 (1943); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2579, pp. 539–41, 546–48 (2d ed. 1995). Where the determinative factor at trial is the credibility of the witnesses, this requires a trial court to specify what witnesses were not credited and why.

■ Additionally, though the clear error standard is formidable, it is not a bulldozer that crushes everything in its way. One important qualification is that the jurisprudence of clear error does not inhibit an appellate court's power to correct errors of law, including those that may affect a so-called mixed finding of law and fact that is predicated on the misunderstanding of the governing rule of law. Similarly, the deference accorded to a circuit court may evaporate when, in making its ultimate decision: (1) a relevant factor that should have been given significant weight is not considered; (2) all proper factors, and no improper factors, are considered, but the circuit court in weighing those factors commits an error of judgment; and (3) the circuit court failed to exercise any discretion at all in issuing its decision. *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996) (citing *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)).

■ Consistent with this approach, courts must be careful not to wear blinders. The judge must sift the evidence produced at trial and gather enough information to paint a true picture of the attendant facts and circumstances. The trial judge must then make a realistic appraisal of what the picture discloses. We think this analysis exposes the principal flaw in this case. The findings made by the trial court are inadequate to allow this Court to find that all relevant factors were considered. Though helpful, the findings are not all-encompassing. Indeed, the findings of the circuit court ignored the central thrust of the defendants' evidence.

The circuit court either misunderstood or misapplied the theory of the defendants. The defendants do not claim that their actual possession of the property in question is sufficient to establish adverse possession. Rather, they contend that their predecessors

---

**17.** We have held that to establish "claim of title," evidence must be presented which shows that possession of disputed property was claimed without actual title ownership by the occupant during the entire requisite ten-year period. *See Somon v. Murphy Fabrication & Erection Co., supra.*

in interest met all the necessary prerequisites of adverse possession and under the doctrine of tacking, the predecessors' interest was passed onto the defendants. The circuit court's findings never addressed this aspect of the defendants' case. This conclusion draws sustenance from the circuit court's order which provides in pertinent part:

> 10. Defendants did not exercise actual dominion over the area between the deed description and fence line.

> 11. The fence ... was more likely a fence around the plaintiffs' [property] rather than enclosing defendants' property. The defendants did not maintain the fence nor did the defendants make any use of the small area of land in dispute between the boundary line and fence.

■■■■■ The upshot is that the circuit court failed to make any findings that would dispose of the defendants' tacking claim. As we have stated several times above, a circuit court sitting without a jury cannot paint with too broad a brush. Rule 52(a) requires the trial judge make findings and conclusions of law that are sufficiently detailed to permit a reviewing court to ascertain the factual core of, and the legal foundation for, the ruling below. This bedrock rule has particular force in cases of this genre. Adverse possession claims are often marked by a significant degree of complexity. Typically, the resolution of such claims demands a careful sifting of imbricated and highly ramified facts. The legal principles that must be applied are convoluted, and they almost always touch upon ancient common-law precepts. Accordingly, a trial court must be scrupulous in chronicling the relevant facts and delineating the linkage of those facts and the ultimate conclusion of adverse possession *vel non.* To this end, the circuit court must discuss not only the evidence that supports its decision

but also all the substantial evidence contrary to its opinion.[18]

Even though the circuit failed to make adequate findings, and virtually ignored the thrust of the defendants' evidence as to tacking, the defendants are not entitled to an adverse judgment decision on appeal. It must be remembered that we do not sit in *nisi prius,* and at all times the burden of proof remains with the defendants as to adverse possession; plaintiffs' burden is an entry level burden of production, if they have any at all. Thus, once the plaintiffs have proffered enough evidence to raise their title to the land, the ultimate burden of persuading the factfinder that they were the beneficiaries of adverse possession under the tacking theory rests with the defendants. On this basis, we reject the defendants' request for judgment as to their adverse possession claim. As we stated in *Burnside,* 194 W.Va. at 275, 460 S.E.2d at 276, "[f]indings of facts are adequate only if they are sufficient to indicate the factual basis for the ultimate conclusions. If an order lacks adequate detail, the case will be remanded for additional specificity."

### III.

### CONCLUSION

To recapitulate, the circuit court's opinion in many respects deftly navigates the marshy terrain of adverse possession jurisprudence. Yet, we believe that the circuit court's opinion lacks essential clarity in its factual findings. For one thing, the circuit court neither acknowledges nor discusses critical evidence that appears to support establishing adverse possession under the tacking theory. For another thing, it never identified nor adequately explained the evidence upon which it relied to support its ultimate conclusion.

---

18. We take this step reluctantly, mindful that the circuit courts have heavy caseloads. An appellate tribunal should not stand unduly on ceremony, but should fill in the blanks in the circuit court's account when the record and circumstances permit this to be done without short-changing the parties. In this situation, however, the record and the burden of proof do not lend itself to curing the omission in this fashion. We are fortified in this cautious approach by what

we envision as the distinct possibility that the circuit court undervalued the import of the tacking doctrine and the defendants' evidence in support of it.

Upon remand, the circuit court may summon and utilize the efforts of counsel in submitting detailed and case specific proposed findings of fact and legal conclusions. *See State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996).

And, finally, it omits any meaningful discussion or mention of potentially salient factors such as the persuasive quality of the defendants' overall evidence.

We leave the procedure to be followed on remand to the circuit court's informed discretion, without endeavoring to set an outer limit on its range of options. At a minimum, the circuit court must discuss the evidence we have identified as troubling (or as possibly overlooked), and explain the relationship of this evidence to the issue of tacking and adverse possession. The circuit court need not stop there, however, it is free to reopen the record, to take additional evidence, and to reconsider any parts of its earlier ruling. To this end, while we neither require or anticipate a new trial, the court may in its discretion permit the parties to supplement the record with additional facts. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2577 (2d ed. 1995). Accordingly, the judgment of the Circuit Court of Mercer County is reversed and remanded.

Reversed and Remanded.