# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **B.R.-2**

**No. 16-1230** (Webster County 15-JA-63)

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.R., by counsel Dennis J. Willett, appeals the Circuit Court of Webster County's November 23, 2016, order terminating her parental rights to B.R.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent based on a finding that she failed to correct conditions of abuse and neglect that led to a prior involuntary termination of her parental rights to older children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In a prior circuit court proceeding in June of 2006, the DHHR filed an abuse and neglect petition alleging that petitioner operated a methamphetamine laboratory in the presence of T.R. and B.R.-1.[3] Petitioner was subsequently criminally charged with the operation of a methamphetamine laboratory. Ultimately, petitioner's parental rights to T.R. and B.R.-1 were

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Because two of the children referenced in this matter share the same initials, we will refer to them as B.R.-1 and B.R.-2 throughout this memorandum decision.

[2]On appeal, petitioner does not raise a specific assignment of error regarding the circuit court's termination of parental rights.

[3]T.R. and B.R.-1 are not at issue in the current appeal.

involuntarily terminated by order entered on December 7, 2009. According to the dispositional order, petitioner was ordered to remain drug and alcohol free and to submit to random drug and alcohol screening.

Thereafter, petitioner gave birth to B.R.-2 in October of 2015. The hospital reported the birth pursuant to West Virginia Code § 49-4-605(a)(3).[4] Petitioner and the child both tested positive for Xanax and hydrocodone at the hospital. The DHHR filed an abuse and neglect petition based on B.R.-2's birth, petitioner's positive drug screens, and her prior termination. The petition noted that, upon information and belief, a physician prescribed both medications to petitioner during her pregnancy.

In December of 2015, the circuit court held a preliminary hearing. Following the presentation of evidence, the circuit court found that the abuse and neglect petition was a "proper mandatory filing based on [petitioner's] prior termination of parental rights and the birth of a new child, as well as the presence of drugs in both [petitioner's] and [B.R.-2's] system at the time of birth."

In January of 2016, the circuit court held an adjudicatory hearing wherein petitioner moved the circuit court for a pre-adjudicatory improvement period. Petitioner's obstetrician testified the he prescribed the hydrocodone in April of 2015 for chronic back pain. He also testified, however, that he did not recall prescribing the Xanax. He further testified that he believed that B.R.-2 had been "habituated to medication" that petitioner was taking and he expected the child to suffer from withdrawals. Following the physician's testimony, the circuit court denied petitioner's motion for a pre-adjudicatory improvement period. Petitioner then testified that she did not recall the circuit court's prior abuse and neglect order that she remain drug and alcohol free or that she could not consume any controlled substances. She also testified that she was currently being randomly drug screened at the probation department and notified probation about her prescriptions. She further testified that she had previously been prescribed Flexeril, Visatril, and Xanax and she "did not know that change would be a violation" of the circuit court's previous order. Petitioner's probation officer testified that she began supervising petitioner in 2011, and compiled a list of petitioner's medications. She also testified that petitioner tested positive for controlled substances that were not on the list of her prescribed medications. Following the evidence presented, the circuit court found that petitioner continued to ingest controlled substances and failed to correct the conditions that led to the prior abuse and neglect petition's filing. The circuit court adjudicated petitioner an abusing parent by order entered on March 7, 2016.

In November of 2016, the circuit court held a dispositional hearing wherein it terminated petitioner's parental rights to B.R.-2, by order entered on November 23, 2016. According to the circuit court's order, petitioner admitted to abusing methamphetamines and collecting her older

[4]Pursuant to West Virginia Code 49-4-605(a)(3), "the [DHHR] shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights . . . [when] the parental rights of the parent to another child have been terminated involuntarily."

child's urine to defeat future random drug screens.[5] It is from the dispositional order that petitioner appeals.[6]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudication of petitioner as an abusing parent.

On appeal, petitioner argues that the circuit court's findings of abuse were not supported by clear and convincing evidence. Petitioner asserts that the evidence presented at the adjudicatory hearing was insufficient to support the findings of abuse. West Virginia Code § 49-1-201 defines an "abused child" as "a child whose health or welfare is being harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Further, this Court has described the "clear and convincing" standard as one in which

> the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a

---

[5]Petitioner's parental rights to B.R.-2 were terminated below. Further, petitioner's parental rights to T.R. and B.R-1 were terminated in a previous abuse and neglect proceeding. The guardian states that B.R.-2 was returned to R.R., her biological father, after he completed an improvement period, and the permanency plan is for her to remain in the father's home.

[6]A transcript of petitioner's dispositional hearing is not included in either petitioner's appendix or in the DHHR's supplemental appendix.

firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014). Further, we have explained that

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ [49-4-601 to 610 (2015)]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § [49-4-605 (2015)] is present.

Syl. Pt. 2, in part, *In re George Glen B. Jr.*, 205 W.Va. 435, 437, 518 S.E.2d 865, (1999). Additionally, we have also explained that when an abuse and neglect petition is based

> upon a previous involuntary termination of parental rights . . . prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

*Id*. at 437, 518 S.E.2d at 865, Syl. Pt. 4.

In this case, as to the January of 2016 adjudication, the DHHR alleged that petitioner gave birth to B.R.-2 and she and the child both tested positive for Xanax and hydrocodone at the hospital. The DHHR filed an abuse and neglect petition based on B.R.-2's birth and positive drug screens. At the adjudicatory hearing, petitioner's obstetrician testified the he prescribed the hydrocodone for chronic back pain but did not prescribe the Xanax. He further testified that he believed that B.R.-2 was "habituated to medication" and would suffer from withdrawals. Petitioner testified that she did not recall that she was previously ordered to remain drug and alcohol free or that she could not consume any controlled substances. She also admitted that she abused controlled substances in violation of the circuit court's order.

Moreover, the circuit court found that, based upon petitioner's continued use of controlled substances, like Xanax, she failed to correct the conditions that led to her previous involuntary termination. Given the clear and convincing evidence of abuse and petitioner's failure to correct the conditions that led to the filing of the prior abuse and neglect petition, we find no error in the circuit court's adjudication.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 23, 2016, order is hereby affirmed.

4

Affirmed.

**ISSUED**:  June 19, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker