# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **R.B. and T.B.**

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 16-0976** (Wayne County 15-JA-020 & 15-JA-022)

## MEMORANDUM DECISION

Petitioner Grandmother A.B.-2, by counsel Timothy P. Rosinsky, appeals the Circuit Court of Wayne County's September 19, 2016, order terminating her guardianship rights to R.B. and T.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Gardner Estep, filed a response on behalf of the children in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in finding that she abused the children, removing the children from her home, and terminating her guardianship rights.[3]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because petitioner and one child share the same initials, we will refer to the child as A.B.-1 and to petitioner as A.B-2 throughout this memorandum decision.

[2]The guardian's response to this Court, which was filed as a summary response pursuant to Rules 10(e) and 11(h) of the Rules of Appellate Procedure, fails to include a section regarding the status of the child. This information is of the utmost importance to this Court. We refer the guardian to Rule 11(i) of the Rules of Appellate Procedure, which requires "briefs filed by the parties (including the guardian ad litem)" in abuse and neglect appeals to contain a section on the current status of and permanency plans for the children and the current status of the parental rights of all of the children's parents.

[3]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, the DHHR filed an abuse and neglect petition alleging that R.B. sexually abused his sister, A.B.-1.[4] According to the petition, the abuse occurred for approximately three years and A.B.-1 disclosed that she was afraid to tell petitioner, her grandmother, about the abuse because she "is afraid of [petitioner] and what she will do." A.B.-1 also stated that she is afraid of [petitioner] coming to the hospital or being called because she would whip her a**." The DHHR noted that A.B.-1 disclosed the abuse to petitioner and, according to an aunt, petitioner did not believe the allegations and called A.B.-1 "a lying little bit**." The child's aunt also expressed concerns over R.B.'s violent behavior towards the children and petitioner's prescription drug use in the home. The DHHR also alleged that the police were called to petitioner's home after she threatened to "kill everyone in the home because of what [is] going on." According to the DHHR, petitioner was reportedly angry at A.B.-1 about the alleged sexual abuse. Following the DHHR's investigation, A.B.-1 and T.B. were placed with their aunt and R.B. remained in petitioner's home with the caveat that he not have contact with other children. By order entered on February 5, 2015, the circuit court ordered the abuse and neglect petition's filing.

The circuit court held a preliminary hearing wherein a DHHR worker and petitioner testified. The circuit court found that there was reasonable cause to believe that A.B.-1 was abused based upon the sexual assault allegations against R.B. and petitioner's inability to properly supervise or protect the children. The circuit court ordered that the children undergo psychological and educational evaluations and that petitioner have supervised visitation with A.B.-1 and T.B. The circuit court also ordered that R.B. would remain in petitioner's home. Subsequently, in March of 2015, the DHHR filed an amended petition that included allegations that petitioner abused prescription drugs, the children were regularly disciplined with a wooden paddle, and petitioner verbally abused the children by calling them "stupid" and referring to A.B.-1 as a "ho." According to the DHHR, the children were home schooled by petitioner and reported that there was no structure to the schooling and that they would "teach [themselves]" by reading books or using computer applications. The children also reported that they would do

---

[4]Petitioner voluntarily relinquished her guardianship rights to A.B.-1 during the proceedings below. On appeal, petitioner raises no assignment of error regarding this child. Accordingly, A.B.-1 is not the subject of this appeal. Further, M.H., the mother of these children, voluntarily relinquished her parental rights in a previous abuse and neglect proceeding. The children's father is deceased. According to the DHHR, A.B.-1 and T.B. were placed in foster homes and the permanency plan is adoption into those homes. R.B. is currently placed in the Round Table juvenile sexual abuse program at River Park Hospital and permanency depends on completion of the program and the program recommendations following completion.

their school work "only if they wanted to" and at the end of the school year, petitioner would complete the work and turn it in to the Board of Education. T.B. reported that he was disciplined with a wooden paddle, a stick, and a belt regularly and that the wooden paddle left marks on his body. He also reported that petitioner "hit" all of the children. The children also reported that petitioner consumed alcohol in their presence and drove with them in her car while intoxicated. According to the amended petition, T.B. was not up-to-date on his immunizations and only received one set of vaccines since birth. The circuit court held a preliminary hearing on the amended petition and petitioner waived her right to the second preliminary hearing.

In May of 2015, after a series of continuances, the circuit court held an adjudicatory hearing wherein a DHHR worker testified as to the allegations contained in both petitions. Based on the evidence presented, the circuit court found that there was clear and convincing evidence that the children were abused based on the sexual abuse allegations against R.B., petitioner's inability to properly supervise or protect the children, petitioner's excessive discipline, psychological abuse, and medical and education neglect. Petitioner requested a post-adjudicatory improvement period and the circuit court granted her request.

The children were subsequently psychologically and educationally evaluated. According to the evaluation report, ten-year-old T.B. was never formally schooled and/or immunized. He displayed aggressive and self-harming behavior when angry and reported that petitioner taught him to use foul language, taught him to hit himself in the head, and taught him to threaten suicide. Testing revealed that his intelligence quotient ("I.Q.") was within the normal range but that he reads and comprehends at a kindergarten to a first-grade level. Twelve-year-old A.B.-1's evaluation report indicated that she would need to repeat the sixth grade, experienced significant behavioral problems, and her low abilities were not commiserate with her I.Q. test results. Fourteen-year-old R.B.'s I.Q. test showed him to be within the borderline normal-to-below-normal intelligence range but his reading comprehension, and mathematical scores were at a first-to-third grade level.

In February of 2016, the circuit court held a dispositional hearing wherein she requested an extension of her improvement period and the circuit court granted her the same with regard to R.B. and T.B. The guardian filed a report with the circuit court in July of 2016, wherein she indicated that R.B. recently disclosed information to her that he had been molested by an older girl who was staying at petitioner's home. He also disclosed that he had sex with A.B.-1 starting when he was approximately five-years old. He further disclosed that he also had sex with T.B. and one other boy at petitioner's home. According to the guardian's report, petitioner denied that there had been any sexual abuse in the home. Following the filing of the guardian's report, the circuit court ordered that R.B. have no contact with petitioner or his siblings and that petitioner have no contact with T.B. The circuit court also placed R.B. at River Park Hospital for treatment. After hearing the additional evidence, the circuit court terminated petitioner's guardianship rights to R.B. and T.B. Based on the evidence presented, the circuit court determined that, because petitioner continually denied sexual abuse and blamed the children, there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect. The circuit court

terminated her guardianship rights to the children by order dated September 19, 2016.[5] It is from that order that petitioner appeals.

The Court has previously established the following standard of review in cases such as these:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[5]Because R.B.'s permanency is unresolved, this Court reminds the circuit court of its duty to establish permanency for the all children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's findings below.

Petitioner argues on appeal that the circuit court erred in finding that the children were "neglected and psychologically" abused because there was no "clear and convincing" evidence of abuse or neglect by petitioner. We do not agree. Pursuant to West Virginia Code § 49-1-3, an "[a]bused child" means a child whose health or welfare is being harmed or threatened by "[a] guardian . . . who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." West Virginia Code § 49-1-3 further defines a "neglected child" as one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's guardian . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

Further, we have described the "clear and convincing" standard as one in which

the evidence does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014).

The evidence below, including the children's testimony regarding the sexual abuse, was sufficient to establish that petitioner abused and neglected the children. The circuit court was presented with evidence that petitioner excessively disciplined the children, called them disparaging names, failed to properly educate or supervise them, failed to supply them with proper medical care, and denied the sexual abuse allegations even after R.B.'s admissions. Accordingly, we find no error below.

Petitioner next argues on appeal that the circuit court erred in removing the children from her home because the DHHR did not have "a valid reason to remove" them. West Virginia Code § 49-6-3(a)(1) provides that

> [u]pon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the court to be a fit and proper person for the temporary care of the child pending a preliminary hearing, if it finds that [t]here exists imminent danger to the physical well being of the child.

In the case below, the DHHR was presented with evidence that R.B. sexually abused A.B.-1. The DHHR correctly removed T.B. from petitioner's home because he was at risk of being abused. In fact, the DHHR later discovered that R.B. had sexually abused T.B., as well. Moreover, after R.B. disclosed that he had been molested by an older girl in petitioner's home, the DHHR correctly removed that child. Accordingly, we find no error below.

Finally, petitioner argues on appeal that the circuit court erred in terminating her guardianship rights because she was not given a "full and fair" opportunity to complete her improvement period. We disagree. West Virginia Code § 49-6-12 details the imposition of improvement periods in abuse and neglect cases. It also describes the duties and responsibilities of all parties to the proceedings, including the role of the DHHR in providing services to the parents and children during the improvement period, as well as monitoring the progress of the participants. Prior to granting a post-adjudicatory improvement period the party seeking the improvement period must file a written motion with the court. According to West Virginia Code § 49-6-12, that party bears the burden of demonstrating to the court by clear and convincing evidence that he or she "is likely to fully participate in the improvement period." Additionally, West Virginia Code § 49-6-5(a)(6) provides that circuit courts are directed to terminate guardianship rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-6-5(a)(6) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "'[t]he abusing guardian . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

In the instant case, petitioner denied the allegations of abuse and refused to address the same. Based on her denial, it is clear that petitioner failed to demonstrate that she would participate in the improvement period. Moreover, it is clear that there was no reasonable likelihood that petitioner could have substantially corrected the conditions of abuse or neglect in the near future because she denied the abuse.

> [I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the

6

perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Because petitioner failed to acknowledge her abusive conduct, it is clear that the circuit court correctly found that there was no reasonable likelihood the conditions of abuse could be substantially corrected. Moreover, the circuit court also found that termination was necessary for the children's welfare. As previous stated, pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate guardianship rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 19, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: June 19, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker