# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **L.M. and T.C.-1**

**No. 16-1171** (Nicholas County 15-JA-88 & 15-JA-89)

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.C.-2, by counsel Matthew A. Bradford, appeals the Circuit Court of Nicholas County's November 2, 2016, order terminating her parental rights to L.M. and T.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Julia R. Callaghan, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court (1) failed to appoint an additional guardian as required by Appendix A of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings; (2) failed to order that the children undergo a psychological examination; (3) erred in terminating petitioner's parental rights because it made several finings that were not supported by the record; (4) erred in terminating petitioner's parental rights without taking the children's wishes into consideration; and (5) erred in denying petitioner's request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed an abuse and neglect petition against petitioner and her husband.[2] The petition alleged that petitioner's oldest child, A.M., had been sexually abused by petitioner's husband for approximately six years, beginning when A.M. was twelve years old, that the abuse occurred while the other children were present in the home, and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Because petitioner and one of the children share the same initials, we will refer to them as T.C.-2 and T.C.-1, respectively.

[2]Petitioner's husband, B.C., is T.C.-1's biological father and A.M. and L.M.'s step-father.

petitioner knew or should have known about the sexual abuse.[3] The petition also alleged that there was drug use in the home that impaired petitioner's parenting skills. The petition further alleged that petitioner "continued to permit [the husband] to have access to the children." According to the petition, A.M. disclosed in an interview that petitioner confronted her multiple times about the inappropriate relationship and blamed A.M. for the sexual abuse. L.M. disclosed in an interview that she previously expressed to petitioner that she had concerns about the relationship between A.M. and the husband but when she voiced those concerns petitioner punished her. L.M. also disclosed that she saw A.M. and the husband together in bed. T.C.-1 disclosed in an interview that she observed petitioner and the husband "[crush] up pills, makes (sic) lines, and suck them up." She also stated that petitioner instructed her not to watch her crush up pills.

In October of 2016, the circuit court held a preliminary hearing wherein it heard testimony from a DHHR worker. The worker testified as to the disclosures made by the children and the DHHR's belief that the children were "in imminent danger" if left in petitioner's care, custody and control because she allowed her husband to have access to the children after her oldest child disclosed the sexual abuse. The guardian recommended that petitioner undergo a psychological evaluation. Based on the evidence presented, the circuit court found that the children were in "danger of emotional and psychological harm" if returned to petitioner's home. The circuit court ordered that the DHHR begin services, including counseling for petitioner, and that petitioner "participate in the psychological evaluation before the adjudicatory hearing." Subsequently, in October of 2015, petitioner completed her psychological evaluation. According to the evaluation report, petitioner "failed to realize or failed to act over a period of six years" regarding A.M.'s sexual abuse. The report indicated that several negative factors, such as her drug abuse, mental abuse, and domestic violence, were not addressed and the children "suffered the negative consequences of her inaction." The report also indicated that petitioner's prognosis for improved parenting is "extremely poor to non-existent and that it is highly likely that her children would be endangered by her continued failure to protect them should they be returned to [her] custody." No services were recommended at that time. Petitioner's psychologist later revised her report to include recommendations that petitioner participate in individual therapy, parenting and life skill classes, and in-home services.

In November of 2016, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations in the petition as follows: that the husband sexually abused A.M.; that petitioner knew or should have known about the sexual abuse based on "her confrontations of A.M. about possible sexual abuse on multiple occasions," and petitioner allowed the husband to visit L.M. and T.C.-1 even after she was aware of the sexual abuse.[4] The circuit court found that the children had been abused and neglected and granted petitioner a post-adjudicatory

---

[3]A.M., petitioner's oldest child, has reached the age of majority and is not the subject of this appeal.

[4]The DHHR moved to amend the petition to add a paragraph alleging that petitioner "knowingly allowed the husband to abuse drugs in front of the children." Petitioner did not object to the addition of that obligation.

improvement period based on the DHHR's recommendation and "her bond" with the children. The circuit court also found that the case "involves aggravated circumstances due to the sexual abuse in the home." The circuit court ordered that the terms and conditions of petitioner's improvement period include her participation in parenting and life skills classes, individual therapy, and domestic violence counseling. It also ordered that she undergo psychological education on sexual abuse, submit to random drug and alcohol screening and pill counts, and attend a battered women's intervention group.

Beginning in August of 2015, the circuit court held a series of review hearings wherein it heard testimony from a DHHR worker that petitioner had a "friend" living in a mobile home near her home and that mobile home was being used as a methamphetamine lab. The worker also testified that petitioner produced three diluted random drug screens and did not have her prescription medications with her for a random pill count. According to the worker's testimony, petitioner had to go to a neighbor's home to retrieve her medications. L.M. testified in-camera that petitioner was associating with people who L.M. recognized as drug users and that she believed that petitioner was abusing and/or selling her prescription medications. Ultimately, the DHHR and the guardian agreed that the matter should be scheduled for disposition.

In November of 2016, the circuit court held a dispositional hearing. A DHHR worker testified that petitioner was participating in individual therapy and therapy with the children, but L.M. indicated that she did not want to participate in therapy with petitioner. The worker also raised concerns regarding petitioner's friend who was operating a methamphetamine lab. She testified that the friend was at petitioner's home on several occasions even though he was identified by the DHHR as someone who should not be at her home because of his involvement in previous abuse and neglect proceedings and his drug use. The worker also testified she did not believe that petitioner was making any improvements in her parenting because T.C.-1 and L.M. indicated that they wanted to remain in foster care and not return to petitioner's custody. A second DHHR worker testified that she also had concerns regarding petitioner's parenting abilities because petitioner continued to state that she had "never done anything wrong" and that she participated in services but believed that she did not need to. The worker also testified that petitioner refused to participate in some services aimed at remedying her eviction from the home she lived in during the proceedings. The parenting services provider testified that petitioner believes she is not "guilty" of anything and did not "feel like" it was an issue that L.M. did not want to live in the home where "her sister was sexually abused by [petitioner's husband] for a period of six years." The supervised visitation provider testified that petitioner talked about the on-going case during visitation. She also testified that petitioner had several visitors during her visitation with the children. Finally, the psychologist who evaluated petitioner testified that petitioner maintained her original prognosis that there was "virtually no hope of [petitioner's] improvement because of her level of denial of responsibility." She also testified that petitioner was "unable to put aside her personal agenda for the betterment or the welfare of her children." Based on the evidence presented, the circuit court found that there was no reasonable likelihood

petitioner could substantially correct the conditions of abuse and neglect and terminated her parental rights to the children.[5] It is from that November 2, 2016, order that petitioner appeals.

The Court has previously established the following standard of review in a case such as this one:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues on appeal that the circuit court erred when it failed to appoint an additional guardian. Petitioner contends that an additional guardian was required by Appendix A of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings because T.C.-1 and L.M. had "conflicting interests" and that T.C.-1's interests were not fairly represented.[6] Petitioner claims that T.C.-1 indicated that she wanted to be returned to petitioner's custody and the children were not returned to petitioner's custody because L.M. "decided" petitioner was not a suitable parent. We do not agree. We have explained that

---

[5]The parental rights of both parents to T.C.-1 were terminated below. Additionally, petitioner's parental rights to L.M. were terminated below. S.M., L.M.'s father, is deceased. The guardian states that the children were placed in a foster home together and the permanency plan is adoption into that home.

[6]Appendix A of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides guardians with guidance in representing a child in an abuse and neglect proceeding under W.Va. Code § 49-4-601, *et seq.* The Guidelines are divided into five parts: 1) Section A sets forth the general role of a GAL and the education and training requirements of a GAL; 2) Section B discusses ethical considerations in representation; 3) Section C describes the duties of a GAL as to the initial stages of representation; 4) Section D discusses the duties of a GAL as to the adjudicatory and dispositional stages of representation; and 5) Section E describes the duties of a GAL as to post-dispositional representation.

[i]n a proceeding to terminate parental rights . . . a guardian *ad litem* . . . must exercise reasonable diligence in carrying out the responsibility of protecting the rights of the children. This duty includes exercising the appellate rights of the children, if, in the reasonable judgment of the guardian *ad litem,* an appeal is necessary.

Syl. Pt. 3, in part, *In re Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991). We have also explained that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989).

In the present case, it was the circuit court, not L.M, as petitioner contends, that determined that it was not in the children's best interests to be returned to petitioner's custody. The circuit court was presented with evidence that petitioner was unwilling or unable to provide for the needs of the children and that continuation in her home was contrary to their best interests because she failed to protect the children or take remedial steps to correct the problem that necessitated the filing of the abuse and neglect petition. Moreover, there is no evidence on the record that the guardian failed to carry out her responsibilities of protecting either of the children's rights. As such, we find no error below.

Petitioner next argues on appeal that the circuit court failed to order that the children undergo psychological evaluations to establish a baseline "to determine if it were possible from the beginning for the children to mentally be able to return to [petitioner's] mobile home." Petitioner cites no law in support of her contentions, with the limited exception of a reference to Appendix A of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings which establishes a duty upon the guardian to monitor whether the children are receiving supportive services. The children in this case received therapeutic services to address their emotional needs and the emotional triggers associated with petitioner's mobile home. Moreover, petitioner contends that psychological evaluations were needed to address their therapeutic needs but their needs were already being met through the aforementioned therapeutic services. Therefore, we find no error below.

Next, petitioner argues that the circuit court erred in terminating her parental rights because it made several findings that were not supported by the record. Petitioner contends that the evidence established that she was "making efforts to utilize services and improve conditions for her children's safety." We disagree. We have explained that, "[g]iven the significance of parental rights, a heightened level of evidentiary proof is necessary to warrant termination." *In re Jessica M.*, 231 W.Va. 254, 260, 744 S.E.2d 652, 658 (1973). "The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). We have described the "clear and convincing" standard as one in which

the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a

firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014).

The evidence below, including the children's testimony regarding petitioner's drug abuse, was sufficient to establish that petitioner abused the children. Further, petitioner admitted that the husband sexually abused A.M., that she knew about the sexual abuse, and that she allowed the husband to have access to the children after she was aware of the sexual abuse. Moreover, the circuit court terminated petitioner's parental rights because it found that she failed to remedy the conditions of abuse and neglect in the home. These findings were based on substantial evidence, including evidence that petitioner was aware of the sexual abuse, failed to protect the children, denied responsibility for the abuse, and participated in services but believed that she did not need those services. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Based upon the substantial evidence outlined above, the circuit court found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she continued to deny that her children had been sexually abused. The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Accordingly, we find no error below.

Petitioner argues on appeal that the circuit court erred in terminating her parental rights without first taking the children's wishes into consideration. West Virginia Code § 49-4-604(6)(c) provides, in relevant part, that the circuit court "shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." In this case, it is undisputed that only one child, L.M., was sixteen years of age at the time of the final dispositional hearing. The record is clear that the circuit court heard from the child, the DHHR and the guardian as to the child's wish that she, ultimately, did not want to be returned to petitioner's custody, even though "she loved her." Further, the circuit court also heard from the DHHR and the guardian as to T.C.-1's wishes. Based upon our review of the record on appeal, we find no error in the circuit court's compliance with West Virginia Code § 49-4-604(6)(c). While the circuit court must consider the children's wishes, which it clearly did, the statutory mandate does not bind the circuit court to any particular outcome based on the child's wishes.

Finally, petitioner argues on appeal that the circuit court erred in denying her request for post-termination visitation. In support of her argument, petitioner contends that there was no

evidence presented that post-termination visitation would be harmful to the children or "not in [their] best interests." With respect to post-termination visitation, we previously have held that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). Under our holding in *Christina L.*, the decision to grant post-termination visitation is a discretionary one for the circuit court based on its consideration of the circumstances of the case before it. Here, petitioner maintains that post-termination visitation was in the children's best interests because she shared a bond with them and continued visitation was not detrimental to their well-being. Following our review of the record on appeal, the parties' arguments, and pertinent legal authority, we find no abuse of discretion in the circuit court's decision to deny post-termination visitation based on the facts of this case. The record on appeal clearly shows that the visitations became unhealthy for the children and that petitioner failed to implement appropriate parenting techniques during visitations. Accordingly, we find no error below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 2, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: June 19, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker