# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.W. and S.W.**

**No. 17-0846** (Mineral County 17-JA-7 and 8)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, E.W., by counsel David C. Fuellhart, appeals the Circuit Court of Mineral County's July 31, 2017, order terminating his parental rights to J.W. and S.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Max H. White, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying him a post-dispositional improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed an abuse and neglect petition alleging that petitioner physically abused both children and that the mother failed to protect the children from the abuse. Specifically, the petition alleged that petitioner pinched, bit, hit, and burned J.W. on multiple occasions and hit S.W. with a wooden spoon on at least one occasion, leaving bruises. The DHHR also alleged that the mother hit the children and witnessed petitioner abuse the children, but failed to protect them and allowed them to be subjected to further abuse. The petition further alleged that petitioner physically abused the mother in the presence of the children. Petitioner waived his preliminary hearing.

In June of 2017, the circuit court held an adjudicatory hearing wherein neither petitioner nor the mother presented any testimony or evidence. The DHHR presented the testimony of the maternal grandmother, who testified that J.W. told her that, "[m]y daddy beat me up." She also

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

testified that she saw bruises on J.W.'s side and when she asked J.W. how it happened, the child stated, "[o]h, my daddy beat my ass with a spoon." She further testified that when she questioned the mother about the child's injuries, she stated, "[J.W.'s] fine. What stories is she telling you now?" The maternal grandmother also testified that the mother called her one day very upset that petitioner kicked the family dog and that the dog was bleeding and required fifteen stitches.

In addition to the maternal grandmother's testimony, Sergeant Scott Huffman of the West Virginia State Police testified regarding his investigation of the abuse of the children. He testified that after his investigation, he charged petitioner with several counts of child abuse, including one for striking J.W. in the face; one for striking her with a spoon, causing bruising; punching her in the stomach, back, and legs; and for burning her face with boiling water. He also testified that the mother was charged with child neglect based upon allowing petitioner to perpetrate physical abuse upon her children. Finally, he testified that upon questioning J.W., he concluded that J.W. was terrified of petitioner, did not want to return home, and that there was no evidence that her disclosures regarding the abuse were fabricated or influenced by her maternal grandmother or anyone else.

Next, the nurse who conducted a physical examination of the children in April of 2017 testified that she observed a bruise on S.W.'s back, which she found suspicious due to its location. She did not observe any bruises on J.W. at that time, but reviewed pictures taken after she was burned on her cheek.

Finally, a caseworker testified regarding her interviews with J.W. in April of 2017 and May of 2017. She testified that J.W. disclosed multiple acts of physical abuse by petitioner, including pinching her arms, burning her face with hot water, hitting her with a spoon in the back, and "beating her up" when she did her homework incorrectly. The caseworker testified that J.W. clarified that "beating her up" meant that petitioner punched her and smacked her face. She also testified that J.W. disclosed that her mother sat on the couch as petitioner burned her face and stated, "[m]om didn't even stop it," referring to the abuse. J.W. also disclosed to the caseworker that she was afraid her little sister, S.W., was going to die when her paternal grandmother put her hand over S.W.'s mouth to silence her when petitioner was beating her mother. J.W. also told the caseworker about the incident in which petitioner kicked the family dog. Based on this evidence, the circuit court adjudicated petitioner as an abusing parent.

In July of 2017, the circuit court held a dispositional hearing wherein neither petitioner nor the mother testified. A therapist who was working with J.W. testified that the child exhibited several signs of trauma. She also testified that J.W. disclosed to her that although her mother did not hurt her, she witnessed a lot of the abuse by petitioner and did nothing to protect her. The therapist testified that it would not be in the children's best interests to return to the home. A caseworker testified that petitioner and the mother remained in a relationship and that neither one of them acknowledged the abuse to J.W. or any other form of abuse in the home. Due to that denial, there were no services that could assist them in reunification. Petitioner's father testified that he never noticed any signs of abuse or neglect and testified that petitioner interacted with the children in various ways, including playing games, fishing, and hiking. The circuit court found that petitioner failed to admit to any abuse or neglect of the children and both parents failed to accept responsibility for the abuse and neglect of the children. Based on that evidence, the circuit

court found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was in the children's best interests. Ultimately the circuit court terminated petitioner's parental rights in its July 31, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the evidence did not support adjudication and asserts that the children's statements were unreliable. We disagree. Pursuant to West Virginia Code § 49-1-201, "'[a]bused child' means a child whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury . . . upon the child or another child in the home." Further, we have described the "clear and convincing" standard as follows:

> the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996).

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014). Here, there was substantial evidence that petitioner abused the children, as the record on appeal shows that petitioner repeatedly abused J.W. by pinching, biting, punching, smacking, and burning her. Additionally, the DHHR presented evidence of J.W.'s disclosures to law enforcement, a nurse, and a therapist

---

[2]In addition to the termination of petitioner's parental rights, the mother's parental rights were also terminated. According to the guardian and the DHHR, the children are placed with their maternal grandmother with a permanency plan of adoption in that home.

3

regarding the physical abuse perpetrated by petitioner and the circuit court found that her disclosures were credible.

Further, we have held that

[b]ecause the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W.Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Petitioner did not testify on his own behalf or present any evidence at the adjudicatory hearing. Based on this evidence, the circuit court did not err in adjudicating petitioner as an abusing parent.

Next, petitioner argues that the circuit court erred in refusing to grant him a post-dispositional improvement period. He asserts that his father's testimony at the dispositional hearing was sufficient to show that he would be willing to participate in an improvement period. We do not find this argument compelling.

Pursuant to West Virginia Code § 49-4-610(3), a circuit court may grant a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period[.]" Here, petitioner failed to meet the burden of proof, as the only evidence in support of his motion for a post-dispositional improvement period was his father's testimony. Petitioner's father's testimony that he had not witnessed abuse by petitioner was insufficient to satisfy the burden necessary for petitioner to be granted an improvement period because ample evidence was established to show that petitioner refused to acknowledge his abuse of the children.

We have held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, petitioner failed to acknowledge the existence of abuse in the home. As a result, to grant petitioner a post-dispositional improvement period would have been futile. Therefore, we find that petitioner failed to satisfy the applicable burden to obtain a post-dispositional improvement period, and we find no error by the circuit court in this regard.

Petitioner also argues that the circuit court erred in terminating his parental rights because there were less-restrictive alternatives available. We disagree and find that termination of petitioner's parental rights was the least-restrictive disposition. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Here, petitioner failed to acknowledge the issues of abuse in the home, and therefore, the issues are untreatable and offering services would have been futile. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon such findings. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 31, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker