STATE OF WEST VIRGINIA

*In re* **D.E.**

**No. 17-0784** (Kanawha County 16-JA-618)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother B.W., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's August 1, 2017, order terminating her parental rights to D.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew Smith, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2016, the DHHR filed an abuse and neglect petition alleging petitioner abused and neglected the child. The petition alleged that the then six month old child remained unbathed for an extended period of time; that the child's clothes were moldy; that it was apparent petitioner had been smoking marijuana because the odor could be smelled on the child; that petitioner hit her boyfriend in the face and then her boyfriend hit her while she was holding the child; and that petitioner was unemployed and had a history of drug use. According to the DHHR, petitioner's aunt and brother observed sores on her arms and legs, allegedly from bedbugs and "shooting up." The DHHR also alleged that petitioner had a history of bipolar disorder and cystic fibrosis. Petitioner waived her preliminary hearing. According to the record, petitioner tested positive for marijuana and methamphetamines and missed several drug screens in January of 2017. The circuit court was concerned by the possibility that the child may also have cystic fibrosis, especially due to petitioner's smoking habits.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In March of 2017, the circuit court held an adjudicatory hearing. Petitioner denied that she used drugs, but admitted that she smoked marijuana outside of her house. When asked about her recent positive drug screen for methamphetamine, she testified that she does not use methamphetamines, and that someone must have "laced her blunt." Petitioner further testified that since the filing of the petition, she was homeless and unemployed. Petitioner stated that she was not aware that visitation with her child had been suspended due to her failure to comply with drug screens as ordered by the circuit court. The DHHR presented testimony that when a Child Protective Services ("CPS") worker visited petitioner's home prior to filing the petition, she noticed an "overwhelming smell of marijuana." Petitioner's relatives informed the CPS worker of petitioner's drug habits and history of domestic violence as well as separate incidents when petitioner became aggressive with the child by jerking him out of a chair and shaking him violently in a stroller. The relatives also informed the CPS worker that they had seen bruises on petitioner's face on multiple occasions. The circuit court found that petitioner did not have a home for the child, that petitioner had not worked for three months, and that she failed to make efforts to comply with services. The circuit court was also concerned for the child's health. The circuit court adjudicated petitioner as an abusing parent and ordered that she participate in services and have the child tested for cystic fibrosis.

In May of 2017, the circuit court held a dispositional hearing. Petitioner was not present for the beginning of the hearing, but was represented by counsel. The DHHR presented testimony that petitioner had not complied with any services and recommended termination of her parental rights. Petitioner arrived late to the hearing, testified on her own behalf, and requested that the disposition be held in abeyance or, alternatively, that she receive a post-dispositional improvement period. Petitioner testified that she had been complying with services for approximately two weeks prior to the dispositional hearing. She further testified that she did not have a home and was not employed, other than doing odd jobs for her ex-boyfriend. The circuit court found that petitioner's substance abuse issues prevented her from being an appropriate parent, she was unemployed and unable to provide for the child, was homeless and could not provide a safe and stable home for the child, and failed to comply with services until two weeks prior to the dispositional hearing. The circuit court was particularly concerned that petitioner continued to associate with her ex-boyfriend who physically abused her. The circuit court found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its August 1, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]In addition to the termination of petitioner's parental rights, the abuse and neglect proceedings involving the father are still pending. According to the guardian and the DHHR, both are recommending termination of the father's parental rights and the child is currently placed with a family member with a permanency plan of adoption in that home.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. She argues that there was no clear and convincing evidence that the child was abused at the time of the filing of the petition. We have described the "clear and convincing" standard as follows:

the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996).

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014). Further, we have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Here, the petition alleged that there was an apparent odor of marijuana on the child. At the adjudicatory hearing, petitioner admitted to using marijuana, and although she denied using methamphetamines, her drug screens were positive for such. The circuit court also considered a CPS worker's testimony regarding petitioner's history of domestic violence with her ex-boyfriend and instances of petitioner's aggression towards the child. Based upon this evidence, we find the circuit court did not err in adjudicating petitioner as an abusing parent.

Petitioner also argues that the circuit court erred in terminating her parental rights when a less-restrictive alternative was available. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Petitioner has a history of drug abuse, admitted to her marijuana use at the adjudicatory hearing, and had positive drug screens throughout the proceedings. Petitioner was offered services, which she failed to comply with until two weeks before the dispositional hearing. The circuit court found that petitioner's drug use prevented her from being an appropriate parent and that she was unable to provide a stable and safe home for the child due to her unemployment and homelessness. The circuit court was also concerned by petitioner's continued contact with a physically abusive ex-boyfriend. Based on this evidence, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the best interests of the child required termination of petitioner's parental rights. As previously stated, pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are to terminate parental rights upon these findings. Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-

4

604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 1, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker