# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.M. and P.M.**

**No. 18-0901** (Kanawha County 17-JA-226 and 17-JA-227)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.M., by counsel Benjamin Freeman, appeals the Circuit Court of Kanawha County's September 13, 2018, order terminating his parental rights to H.M. and P.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), W. Jesse Forbes, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in forcing petitioner to participate in an improvement period when there were no allegations against him in the petition, adjudicating him as an abusing parent, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed a child abuse and neglect petition against petitioner, the mother, and the mother's boyfriend. The petition indicated that petitioner was incarcerated at the time of its filing. The DHHR alleged that the mother and her boyfriend abused drugs in the presence of the children. It concluded that "the respondent parents have failed to provide the children with the necessary food, clothing, supervision and housing at times since the birth of the minor children." The DHHR further stated that "the respondent" has not provided the children with any financial support for at least some periods and that these failures have placed the children in risk of harm. Finally, the DHHR claimed that "the respondents are not sufficiently motivated and organized to provide for the needs of the infant children."

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Subsequent to the petition's filing, petitioner was released from incarceration, placed on supervised release, and provided services in connection with this proceeding. A hearing was held in October of 2017, wherein a Child Protective Services ("CPS") worker testified regarding petitioner's "improvement period."[2] The worker stated that petitioner only received visits with the children at that point and that services had not been set up because they "felt that they were [not] needed at that particular time." Petitioner testified that he was employed, would have suitable housing in the next two weeks, and would request any services that he needed. Following testimony, the DHHR recommended that the circuit court continue petitioner's services and improvement period. Counsel for petitioner requested that the circuit court "adopt the recommendations" of the DHHR that the permanency plan for the children be reunification with petitioner. Counsel stated that there were "no real allegations" against petitioner other than he was participating in a work release program at the time the petition was filed. Counsel also asked that petitioner be permitted to request any services "that he felt he needed." The circuit court ordered that petitioner's improvement period be continued, with no objections.

In January of 2018, the circuit court held a hearing for the purpose of reviewing petitioner's improvement period. The DHHR advised the circuit court that petitioner tested positive for a prohibited substance which constituted a violation of his work release program, and was thus re-incarcerated and subsequently released on parole. The circuit court ordered the DHHR to provide petitioner with services such as random drug screens, adult life skills classes, and assistance with transportation. Petitioner was also instructed to obtain and maintain suitable housing and employment. His improvement period was continued without objection.

At a second review hearing held in February of 2018, the DHHR reported that petitioner, who failed to attend the hearing, was not complying with the terms and conditions of his improvement period. The circuit court granted the DHHR's request to amend the petition and set the matter for adjudication. Later in February, the DHHR filed an amended petition alleging that petitioner was incarcerated at the time of the filing of the original petition and included that he was released on a work release program and subsequently re-incarcerated and then released again. The DHHR alleged that petitioner was offered services to allow him to gain custody of the children but that he failed to attend visitation with the children and adult life skills classes on a regular basis and failed to comply with random drug screens. The DHHR also alleged that petitioner did not have housing or employment.

The circuit court held an adjudicatory hearing regarding the amended petition in March of 2018. Petitioner failed to attend but was represented by counsel. The guardian proffered that petitioner was initially granted a preadjudicatory improvement period following his release from prison and that he had not complied with the terms and conditions imposed. Counsel for

---

[2]Although no order granting an improvement period appears in the record, and it is unclear whether petitioner was granted a formal improvement period, it is undisputed the petitioner had not yet been adjudicated and was being provided services in an attempt to help him gain custody of the children.

petitioner reported that petitioner had originally complied with services but later stopped participating and failed to maintain contact with him or the DHHR.

A CPS worker testified that petitioner was offered services but that he failed to participate in the same. Petitioner attended a few adult life skills classes, but cancelled visits with the children and failed to contact the worker in order to obtain assistance with employment and housing opportunities. The worker expressed that the children were disappointed with petitioner's behavior but noted "they've been used to this their whole [lives]" as petitioner had been incarcerated for several years prior to the filing of the petition. The worker stated that petitioner did not provide the children with any support, food, clothing, or shelter. After hearing evidence, the circuit court adjudicated petitioner as an abusing parent.

In May of 2018, the circuit court held a dispositional hearing. Counsel for petitioner advised the circuit court that petitioner had been re-incarcerated. The DHHR presented the testimony of a CPS worker who recommended termination of petitioner's parental rights due to his failure to comply with services and criminal behavior during the proceedings. The worker stated that the children were disappointed by petitioner's actions and that P.M. was particularly negatively affected. After hearing testimony, the circuit court found that petitioner had not made sufficient efforts to rectify the circumstances that led to the filing of the petition and failed to follow through with a reasonable family case plan designed to reduce or prevent the abuse and neglect of the children. Finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests, the circuit court terminated his parental rights. It is from the September 13, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[3]The mother's parental rights were also terminated below. The children were placed in the home of their maternal grandmother. The permanency plan for P.M. is adoption by the grandmother. H.M. will not be adopted at this time as she will turn eighteen years old in May of 2019.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the original petition contained no allegations against him. According to petitioner, the only allegation of his abuse or neglect of the children was that he was incarcerated at the time of its filing, and he avers that incarceration alone cannot be the sole basis for adjudication.[4] Petitioner further argues that because there were no allegations against him, the circuit court wrongfully forced him to participate in an improvement period. Finally, petitioner argues that the amended petition also failed to contain sufficient allegations against him as it only vaguely listed his failure to comply with his invalid improvement period and his failure to obtain housing or employment, which he denies. We disagree.

We find no merit in petitioner's contention that the petitions contained no allegations against him or failed to adequately allege abuse and neglect. The original petition clearly states that petitioner was incarcerated at the time of the petition's filing and that "the respondent parents have failed to provide the children with the necessary food, clothing, supervision and housing at times since the birth of the minor children." The petition further stated that the respondent parents were not sufficiently motivated or organized to provide for the needs of the children. As such, it is clear that the DHHR was alleging that petitioner – a parent to the children at issue – was incarcerated and had not provided for his children. In the amended petition, the DHHR alleged that petitioner failed to take advantage of services offered to assist him in gaining

---

[4]In support of his contention, petitioner cites to *In re Cecil T.*, which holds

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 3. However, we note that this Syllabus Point discusses incarceration as a sole basis for disposition, not adjudication, and further point out that "this Court has never held that incarceration can not be the sole basis for terminating parental rights." *Id*. at 96, 717 S.E.2d at 880. Indeed, even the Syllabus Point upon which petitioner relies clearly supports this position, given that it addresses certain considerations that must be addressed "[w]hen no factors and circumstances *other than incarceration* are raised . . . ." (Emphasis added). In any event, we find that sufficient evidence existed even apart from petitioner's incarceration to adjudicate him as an abusing parent as more fully discussed above.

custody of his children, including visits with the children. Further, the DHHR alleged that petitioner had no housing or employment.[5] Accordingly, we find that the petition contained sufficient allegations against petitioner and further note that petitioner's allegation that he should not have been required to participate in services offered by the DHHR, either through a formal preadjudicatory improvement period or not, lacks merit in light of this fact.

Nevertheless, even assuming for the sake of argument that the petitions contained insufficient allegations against petitioner, he never objected to the contents of the petitions nor did he otherwise seek to dismiss the petitions for failure to adequately allege abuse and/or neglect. Moreover, petitioner fails to cite to the record demonstrating where he objected to participating in an improvement period. As such, petitioner has waived his right to raise this issue on appeal. *See State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal."). Accordingly, the Court finds that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in adjudicating him as an abusing parent. Petitioner avers that without proper allegations of abuse and neglect against him or findings regarding why his preadjudicatory improvement period was terminated, the circuit court never should have adjudicated him as an abusing parent. We disagree.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

---

[5]While petitioner disputes that he did not have adequate housing or employment, he fails to explain what employment or housing he had and also fails to cite to the record to show that he presented any evidence in support of this position.

Pursuant to West Virginia Code § 49-1-201, an "'[a]busing parent' means a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Further, a

> "[n]eglected child" means a child: (A) [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

*Id.* Here, the record establishes that petitioner was incarcerated for several years before the filing of the petition, leaving the children in the mother's care and subject to the effects of her severe drug abuse. Petitioner failed to provide the children with any monetary or emotional support during that time. After his placement in a work release program, petitioner continued his history of not providing for the children despite having been granted services designed to help him gain custody of the children. Petitioner failed to visit with the children, consistently attend adult life skills classes, submit to random drug screens, or obtain suitable housing or employment. Petitioner failed to comply, despite his knowing that the DHHR recommended placement of the children with him if he would simply comply with services. Petitioner was also subsequently re-incarcerated. As such, it is clear that petitioner demonstrated a refusal, failure, or inability to provide for the children. His refusal constituted neglect, and we find no error in the circuit court's decision to adjudicate petitioner as an abusing parent.

We likewise find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6), in relevant part, provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The evidence overwhelmingly demonstrates that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future. Following his release from incarceration, petitioner was subsequently re-incarcerated two separate times during the proceedings. He failed to submit to random drug screens, attend adult life skills classes, or maintain contact with his attorney and the DHHR. Further, petitioner failed to visit the children, and his failure substantially negatively impacted the children, particularly P.M. The children expressed their frustrations and disappointments to the CPS worker, who testified that P.M.

6

seemed ready to "move on" in life. Regarding petitioner's failure to attend visits with the children, we have noted "that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996)(citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Petitioner also failed to obtain suitable housing or employment. Having reviewed the record, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the children's welfare. Accordingly, we find no error.

For these reasons, we find no error in the decision of the circuit court, and its September 13, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 15, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison